**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1063
_____

RICHARD P. GLUNK, M.D., F.A.C.S.,
Appellant

v.

R. BARRETT NOONE, M.D.; SCOTT M. GOLDMAN, M.D.; MARIE VANBUSKIRK;
MAIN LINE HEALTH; JOYCE MCKEEVER; OLLICE BATES, JR., M.D.; KERRY
MALONEY; ANDREW DEMAREST; DAVID GRUBB; BASIL MERENDA; MARK
VESSELLA; PETER MARKS; STEVEN DADE; SABINA HOWELL; TAMMY
DOUGHERTY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:16-cv-01147)
District Judge: Honorable Yvette Kane
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 11, 2017
Before: SHWARTZ, COWEN and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 18, 2017)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Richard P. Glunk, M.D., appeals from the order of the District Court dismissing his amended complaint. For the reasons that follow, we will affirm.

In December 2010, the Pennsylvania State Board of Medicine suspended Dr. Glunk's medical license for 60 days on grounds of immoral conduct, and the Commonwealth Court affirmed. Glunk v. State Bd. of Med., 2011 WL 10893889 (Pa. Commw. Ct. June 15, 2011). In April 2014, Dr. Glunk filed a civil rights action in the Middle District of Pennsylvania alleging that the Board violated his due process rights. Glunk v. Pa. State Bd. of Med., et al., M.D. Pa. Civ. No. 1:14-cv-00659 (Glunk I). One allegation in the second amended complaint in Glunk I was that the hearing examiner in Dr. Glunk's suspension proceedings was improperly influenced by an ex parte letter, and confidential peer-review materials enclosed with that letter, that a malpractice attorney had sent to the Board.

While Glunk I was pending in the Middle District, Dr. Glunk brought the case on appeal here (Glunk II) in the Eastern District of Pennsylvania. Glunk II differed from Glunk I in that it added claims against the private party Main Line Health, Inc., plus two Main Line Health physicians. The amended complaint in Glunk II also, however, once again set out allegations related to the confidential peer-review materials that the Board had allegedly received before it considered Dr. Glunk's suspension. The judge presiding over Glunk II in the Eastern District dismissed the Main Line Health parties because they were not state actors, and declined to exercise supplemental jurisdiction over the state law claims against them. The state officials that Dr. Glunk had sued in both Glunk I and Glunk II remained in the case. Glunk II was then transferred in June 2016 to the Middle

2

District pursuant to the first-filed rule, see EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988), due to substantial overlap with the subject matter of the earlier-filed Glunk I.

After the transfer, a Magistrate Judge recommended that the District Court grant the defendants' motions to dismiss Glunk II as duplicative of Glunk I. In the meantime, the District Court dismissed the second amended complaint in Glunk I for the failure to state a claim upon which relief could be granted. The District Court then dismissed Glunk II on res judicata grounds, concluding that the order in Glunk I was a final judgment on the merits involving the same parties and essentially the same cause of action as Glunk II. This appeal followed.

On appeal, Dr. Glunk argues that the District Court should not have dismissed his amended complaint because he says he brought a new, distinct cause of action in Glunk II. That claim was based on the revelation, in October 2014, that the Board had allegedly received confidential peer-review materials before it considered Dr. Glunk's suspension. Dr. Glunk also argues on appeal that the District Court abused its discretion when it stayed discovery while the state officials' motions to dismiss were pending. Dr. Glunk asserts that discovery of an electronic-mail chain discussing the peer-review materials that had been sent to the Board would have shown that his claims were viable.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's dismissal order is plenary, see Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012), and we review the District Court's decision to stay discovery for an abuse of discretion, see In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 365 (3d

3

Cir. 2001). Because Dr. Glunk proceeded pro se in the District Court, we construe his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

We will affirm. The doctrine of res judicata, also known as claim preclusion, bars claims that were brought, or could have been brought, in a previous action. In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). Claim preclusion applies where there is "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Id. (citation omitted). In determining whether the same cause of action is involved, the courts look to the "essential similarity of the underlying events giving rise to the various legal claims." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) (citation omitted).

We recently affirmed the District Court's judgment in Glunk I. Glunk v. Pennsylvania State Bd. of Med., No. 16-3996, 2017 WL 1403163, at *5 (3d Cir. Apr. 19, 2017). As our opinion in that case states, Dr. Glunk's second amended complaint in Glunk I alleged that there was "new evidence" that was not available when the Commonwealth Court heard his appeal from the suspension proceedings. Id. The nature of that new evidence was that the Board had allegedly received confidential peer-review materials enclosed with an ex parte letter that somehow influenced the hearing officer's decision to suspend Dr. Glunk's license. Id. As we explained in the opinion affirming the District Court's judgment in Glunk I, the allegations concerning the ex parte letter and the peer-review materials could not state a viable due process claim. Id. Those documents had nothing to do with the witness whose testimony was used to support the

4

charge of immoral conduct, and the hearing officer's determination was based on the credibility of that witness.  Id.

As the District Court explained in this case, Dr. Glunk based his suit in Glunk II on essentially similar allegations concerning Dr. Glunk's discovery, in October 2014, that the Board had allegedly received confidential peer-review materials with the ex parte letter.  The state officials that remained in Glunk II after it was transferred to the Middle District in June 2016 had already been sued based on those allegations in Glunk I.  Dr. Glunk filed the original complaint in Glunk II in October 2015, and filed the second amended complaint in the earlier-filed Glunk I three weeks later.  Both of those complaints raised a due process claim based on the ex parte letter and peer-review materials sent to the Board.  Contrary to Dr. Glunk's assertion, therefore, there is nothing about the ex parte letter and peer-review materials that was not or could not have been litigated in Glunk I.  Under those circumstances, the District Court was duty-bound to dismiss Glunk II under the doctrine of claim preclusion.

Dr. Glunk's challenge to the District Court's discovery stay also provides no basis for reversal.  In the Glunk I appeal, we concluded that "additional discovery of communications at the Department of State would not have revealed evidence to support the necessary elements of a claim for relief."  Id.  So too here—just as in Glunk I, the ex parte materials that had been sent to the Board did not relate to the witness that accused Dr. Glunk of wrongdoing.  Furthermore, the decision to stay discovery in Glunk II while the motions to dismiss were pending was a straightforward exercise of docket

5

management.  See In re Orthopedic, 264 F.3d at 365 (not an abuse of discretion to stay discovery while considering motion to dismiss).

For the foregoing reasons, we will affirm the District Court's judgment.